IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY A. MACON, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 11 C 0006 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Stacey Macon ("Claimant") brings this action under 42 U.S.C.§ 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin,[1] Acting Commissioner of Social Security ("Commissioner"), denying his applications for disability insurance benefits and supplemental security income. Claimant argues that the decision of the Administrative Law Judge ("ALJ") denying his applications for disability insurance benefits and supplemental security income should be reversed or, alternatively, should be vacated and remanded to the Social Security Administration ("SSA") for further proceedings. In support of his motion for summary judgment, Claimant raises the following issues: (1) whether the ALJ properly considered the opinion of Claimant's treating physician; (2) whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence; (3) whether the ALJ properly considered evidence of Claimant's sleep apnea and fatigue in conjunction with

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant-Respondent in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

his RFC assessment; (4) whether the ALJ properly considered Claimant's obesity in combination with his other impairments; and (5) whether the ALJ satisfied his burden at step 5 when considering the testimony of the vocational expert ("VE").

For the reasons discussed herein, Claimant's motion for summary judgment is granted in part and denied in part [Dkt.#27], and the Commissioner's cross-motion is granted in part and denied in part [Dkt.#35]. This matter is remanded to the SSA for further proceedings consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

### A. Procedural History

Claimant filed applications for disability insurance benefits and supplemental security income on January 29, 2008, alleging a disability onset date beginning January 29, 2008. R.14. The SSA initially denied the applications on March 19, 2008 and, upon reconsideration, on July 18, 2008. R.14, 115-118, 120-125. Thereafter, on August 28, 2008, Claimant filed a written request for a hearing. R.14, 140-142. Claimant appeared with his attorney Richard Feingold and testified at a hearing on December 4, 2009 before ALJ Curt Marceille. R.14, 30-92. Glee Ann Kehr also appeared and testified as a VE at the hearing. R.14, 92-109. No medical expert testified.

On January 10, 2010, the ALJ issued his decision finding that Claimant had not been under a disability within the meaning of the Social Security Act from January 29, 2008 through the date of the decision. R.14-24. Specifically, the ALJ found that Claimant had severe impairments, including diabetes, glaucoma, sleep apnea and obesity. R.16. The ALJ, however, concluded that Claimant did not have an impairment or combination of impairments that meets

or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R.16.  The ALJ then concluded that Claimant has "the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  The claimant can carry/lift a maximum of 20 pounds and sit/sand/walk a total of about six hours in an eight hour workday. The claimant can occasionally balance, stoop, kneel and crawl and he requires a sit/stand option that allows him to shift positions every 30 minutes." R.17.  The ALJ ultimately concluded that Claimant was not capable of performing his past relevant work as a bus driver but that "[c]onsidering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a))." R.22-23.

On March 10, 2010, Claimant filed a request with the Appeals Council for review of the ALJ's decision. R.176.  On November 18, 2010, the Appeals Council denied Claimant's request for review of the ALJ's decision, making the ALJ's determination the final decision of the Commissioner.  R.1-5.  Claimant seeks review in this Court pursuant to 42 U.S.C.§ 405(g).

**B.    Hearing Testimony – December 4, 2009**

**1. Claimant Stacey Macon**

At the time of the hearing, Claimant was 50 years old and living with his fourteen year old nephew.[2]  R.35-36  Claimant attended high school through the 11th grade and has past relevant work as a bus driver. R.35, 37.  Claimant testified that he last worked in 2004 and was

---

[2] Claimant's sister passed away in 2003, and Claimant moved into his sister's apartment to help care for her children after she died. R.60.

laid off due to lack of work. R.37. Claimant testified that he looked for work after he was laid off but that he did not obtain any other employment. R.38. Claimant then testified that he started not to feel well, was admitted to the hospital and diagnosed with diabetes. R.38. Claimant also testified that he has a bad heart. R.38.

Claimant testified that he "can hardly walk" and has difficulty and fear of sleeping. R.38-39. Claimant testified that he has sleep apnea. R.43. Because of his sleep apnea, Claimant testified that he has to take "quite a few naps during the day" due to lack of sleep during the night. R.45. He testified that he sleeps with a machine to help him sleep safely but that he wakes up frequently because he is fearful that he is not going to wake up. R.43, 45-46. Claimant testified that he participated in a sleep study and continued to use the machine after the sleep study. R.46-47. He stated that he gets a maximum of two hours of uninterrupted sleep during the night. R.67.

Claimant also testified that he feels "sickly" because of his diabetes and problems with his blood sugar. R.38-41. Claimant, however, acknowledged that he has "good days, if [he] eat[s] properly and take[s] [his] medicine." R.42.

Claimant further testified that he has trouble with his vision. R.53. He stated that he wears his glasses while driving but has no other driving restrictions. R.53. Claimant testified that he can read "normal sized print" with his glasses. R.54. He also testified that he has glaucoma and as a result has some problems with his peripheral vision. R.69-70.

Claimant testified that he also has problems with his kidneys and that he has to go to the bathroom frequently, including waking up two to three time a night to go to the bathroom. R.55. Claimant testified that his diabetes is a contributing factor for his kidney problems. R.56.

4

Claimant also testified that he has trouble walking due to pain in his knees and back. R.48. Claimant testified that he can stand for only five to ten minutes before he has to sit down. R.49. Claimant also testified that his orthopedic doctor prescribed a cane and that he uses a cane for assistance when walking. R.49. Claimant also stated that he received injections into his knee which helped relieve the pain at first but then the pain and swelling returns. R.49-50. Claimant testified that he can walk about six feet before he has to sit down because of the pain he has in his back. R.57. Claimant testified that he also has some shortness of breath which causes difficulty with standing and walking. R.72-73. Claimant, however, acknowledged that he walked into the building for the hearing without having to sit down after six feet but with the assistance of his cane. R.57. Claimant testified that he can stand for only three to five minutes before has to "bend over to get some relief" or has to sit down. R.58. Claimant stated that he can sit for an hour to an hour and a half. R.58-59. Claimant testified that he does not have any problems with his hands and that he can lift a gallon of milk. R.59.

Claimant testified that during a typical day he wakes up and cooks something for breakfast and that he may take a nap afterward. R.62. He testified that he watches television, does word puzzles, and plays hand-held electronic games. R.62, 64. Claimant testified that he will talk on the telephone with his mother and that he sometimes will visit his brother's house or visit a friend. R.63. He testified that he attends church two Sundays a month. R.63.

Claimant testified that he goes grocery shopping but has to use a cart to get around and that he cannot grocery shop while standing up. R.60-61. Claimant testified that he does some cleaning and laundry but that he does not do any yard work, gardening or snow shoveling. R.61. He also testified that he does not take out the trash. R.61.

### 2. Vocational Expert Testimony

Glee Ann Kehr testified as a VE at the hearing and identified Claimant's past work as a bus driver, which is medium, low and semi-skilled. R.93. Based on the first hypothetical posed by the ALJ which assumed an individual who can perform medium work, the ALJ acknowledged an individual who could perform medium work could perform Claimant's past relevant work. R.93.

Based on the next hypothetical posed by the ALJ which assumed an individual with Claimant's age, education and past work experience who can perform light work, the VE testified that an individual with those limitations could not perform Claimant's past relevant work as a bus driver. R.94. The VE, however, identified other work an individual with the specified limitations (*i.e.*, an individual with Claimant's age, education and past work experience who can perform light work) could perform including housekeeping jobs, information clerk, and office helper . R.94.

The ALJ further inquired whether an individual who required a sit/stand option could perform any of the light level jobs identified by the VE. R.94. The VE responded that a sit/stand option would preclude the housekeeping job and would reduce the number of available information or office clerk positions by approximately 50 percent, but that jobs still would exist in the national economy for an individual with Claimant's age, education and past work experience who can perform light work. R.94. The VE then clarified that an individual would have to "sustain concentration and pace 85 percent of the work time" so that the reduced number of information and clerk positions still could be performed with a sit/stand option. R.95. The VE further testified that if the sit/stand option was taking such an individual "off-task" so that he

was not able to maintain concentration and pace 85 percent of the work time, then light work would be precluded. R.95.

## C.      Medical Evidence

Claimant submitted some medical evidence in support of his applications for disability insurance benefits and supplement security income. However, there are significant gaps in treatment in the medical records submitted by Claimant.  In September 2005, 2006 and 2007, Claimant was seen for a work physical and drug screens. R.497-504.  From December 2005 through December 2007, there are minimal records.  During 2007, Claimant was seen for prescription refills and reported no complaints on several different occasions. R.497, 500.  In 2006 through 2008, eye exams showed that while Claimant had glaucoma, his visual acuity was near normal. R.360-377. Claimant submitted limited records for treatment received in 2009.

### 1. St. Margaret Mercy Hospital Records

Claimant was hospitalized from September 28 through October 2, 2007 at St. Margaret Mercy Hospital for shortness of breath.  R.404-460.  On discharge, Claimant did not have any chest pain, and diagnostic testing did not suggest that his shortness of breath was a serious problem.  R.405-407.  Although a chest x-ray showed cardiomegaly, his electrocardiogram and pulmonary function test were normal and a stress test was negative for heart disease.  R.409, 445, 463, 489. There are additional records from St. Margaret Mercy Hospital from July 2008 and November 2008.  R.560-606.

### 2. Dr. Huma Mulk

From the records, it appears that Dr. Mulk began treating Claimant in approximately 2007. Although the medical records do not pinpoint a specific date of diagnosis, it is not disputed

that Claimant has diabetes. After his diagnosis, Claimant has experienced some abnormal blood sugar readings (R.477, 506, 514, 609, 625) as well many normal or negative readings in 2007 and 2008 (R.508, 511, 512, 515, 521, 524,611, 619, 621). There are progress notes from August 7, 2008 and January 31, 2009 which indicate "severe non-compliance" with his medications but that Claimant does not report any complaints or significant problems due to diabetes or elevated blood sugar. R.617, 622 Claimant was diagnosed with obstructive sleep apnea in 2007 which is treated with a bipap machine, and Claimant participated in a sleep apnea study in March 2008. R.626-627.

Additional records show that an EKG performed in March 2008 was normal. R.628, 633. In July 2008, a chest x-ray revealed cardiomegaly but did not note any other problems. R.623. Dr. Mulk opined that Claimant could stand for less than 30 minutes, sit without limitations, walk less that two blocks, and lift less than 20 pounds. R.537-539.

### 3. St. James Hospital Medical Records

In May 2008, Claimant complained of left knee pain and started physical therapy. R.541. St. James Hospital reported degenerative disc disease, lumbosacral tenderness, flexion mildly reduced to 80 degrees and extension of 10 degrees. R.542-543. Osteoarthritis of the left knee was found but Claimant retained the full range of motion and ambulation was normal with no gait abnormalities. R.542-543. There was no evidence of nerve root compression or atrophy of the lower extremities. R.542-543.

### 4. Dr. Linda Adkins

Dr. Adkins is Claimant's eye doctor and has treated Claimant since January 2006. R. 678. Dr. Adkins diagnosed Claimant with primary open angle glaucoma at that time. R.678. Dr.

Adkins reported Claimant's visual acuity with correction is 20/40 in his right eye and 20/30 in his left eye and that Claimant's near vision is 20/25 in both eyes. R.678. She reported further that Claimant's visual acuity is 85% in his right eye and 90% in his left eye. R.678.

### 5. State Agency Physicians

Based on three Physical Residual Functional Capacity Assessments, the state agency physicians determined that Claimant could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about 6 hours in an 8-hour work day, sit about 6 hours a day in an 8-hour work day, and push and/or pull for unlimited period of time. R.378-385; 528-535; 553-555,

## D.    The ALJ's Decision

On January 10, 2010, the ALJ issued his decision finding that Claimant has not been under a disability as defined by the Social Security Act from January 29, 2008, the alleged date of disability, through the date of his decision. R.24. Specifically, the ALJ concluded that based on Claimant's applications for disability insurance benefits and supplemental security income filed on January 29, 2008, Claimant was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. R.14.

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 29, 2008. R.16 At step two, the ALJ found that Claimant's impairments, including diabetes, glaucoma, sleep apnea, and obesity, were severe because "they cause more than minimal limitations on the claimant's ability to perform basic work-related activities." R.16. At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and

416.926). R.23. Specifically, the ALJ concluded: "despite the claimant's diagnosed impairments, the medical evidence does not document listing level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination." R.17.

The ALJ then considered Claimant's RFC and concluded that Claimant has "the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The claimant can lift/carry a maximum of 20 pounds and sit/stand/walk a total of about six hours in an eight hour workday. The claimant can occasionally balance, stoop, kneel and crawl and he required a sit/stand option that allows him to shift between positions every 30 minutes." R.17. The ALJ further concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent that are inconsistent with the above residual functional capacity" R.17. In summary, the ALJ concluded that "the treatment of the alleged impairments has generally been routine and conservative in nature. Although the claimant's impairments are severe, they do not preclude him from completing basic work related activities." R.22.

At step four, the ALJ concluded that, based on the VE's opinion, Claimant is unable to perform his past relevant work and "is limited to less than the full range of light work with a sit/stand opinion." R.22.

At step five, the ALJ concluded, based on the VE's opinion and considering Claimant's age, education, work experience and RFC, that Claimant "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R.23.

## II. LEGAL STANDARD

### A. Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming

the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may

not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making

independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Thus, judicial review is limited to determining whether the ALJ applied the correct legal

standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at

1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the

decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C.

§ 405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a

"disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th

Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected . . .

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An

individual is under a disability if she is unable to do her previous work and cannot, considering

her age, education, and work experience, partake in any gainful employment that exists in the

national economy. 42 U.S.C. § 423(d)(2)(A).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20

CFR. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: (1)

whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a

severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable

of performing other work. *Id.* Once the claimant has proven she cannot continue her past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in support of his motion for summary judgment: (1) whether the ALJ properly considered the opinion of his treating physician; (2) whether the ALJ's RFC determination was supported by substantial evidence; (3) whether the ALJ properly considered evidence of Claimant's sleep apnea and fatigue in conjunction with his RFC assessment; (4) whether the ALJ properly considered Claimant's obesity in combination with his other impairments; and (5) whether the ALJ satisfied his burden at step 5 when considering the testimony of the VE.

### A. THE ALJ DID NOT SUFFICIENTLY EXPLAIN HIS DECISION TO NOT GIVE CONTROLLING WEIGHT TO CLAIMANT'S TREATING PHYSICIAN

An ALJ makes an RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96–8p. In doing so, an ALJ must determine what weight to give the opinion of a claimant's treating physician. 20 C.F.R. § 404.1527. A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404 .1527(d)(2); *see Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).

If the ALJ determines that a treating physician's opinion is unsupported or inconsistent with the record, the ALJ may reject the opinion but must give "good reasons" for doing so. 20

C.F.R. § 404.1527(d)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). The ALJ then must go on to determine what, if any, weight to give the opinion using the factors listed in 20 C.F.R. § 404.1527(d)(2), including length and frequency of treatment, the physician's specialty, the types of tests performed, and consistency and support for the physician's opinion. *Id.* at 308; *Larson*, 615 F.3d at 751. The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872.

In this case, the ALJ did not give controlling weight to the opinion of Claimant's treating physician Dr. Huma Mulk. R.22. Dr. Mulk opined, among other things, that Claimant "could stand for less than 30 minutes, sit without limitation, walk less than two blocks and lift less than 20 pounds." R.22. The ALJ "assign[ed] little weight" to Dr. Mulk's opinion and provided two cursory reasons for discounting her opinion: "Dr. Mulk does not explain why such limitations are justified and it [Dr. Mulk's opinion] is inconsistent with the evidence as a whole." R.22. Unfortunately, the ALJ did not explain why he thought Dr. Mulk's opinion lacked an objective basis, nor did he identify the evidence he felt was inconsistent with Dr. Mulk's views. Although the ALJ discussed some medical evidence and testimony elsewhere in his decision, he did not point to any specific evidence that he believed was inconsistent with Dr. Mulk's opinion. Without more help from the ALJ with respect to the basis for his decision, this Court cannot uphold it against Claimant's challenge.

The fundamental problem with the ALJ's opinion is one of articulation. The ALJ stated that even though he gave "little weight" to Dr. Mulk's opinion, he nevertheless incorporated Dr. Mulk's limitations into his RFC. If the ALJ felt that was appropriate, however, then why did he

assign "little weight" to Dr. Mulk's opinion?  It is inconsistent for the ALJ to reject Dr. Mulk's opinion as not supported by the evidence in the record but then to adopt Dr. Mulk's recommended limitations as part of his RFC.  R.22.  The ALJ's one-sentence dismissal of Dr. Mulk's opinion provides little insight into the ALJ's rationale.  Accordingly, the Court cannot find that the ALJ built a logical bridge for his decision to assign less than controlling weight to Dr. Mulk's opinion as Claimant's treating physician or for his ultimate conclusion concerning Claimant's RFC based upon limitations that are functionally equivalent to those found by Dr. Mulk.

It may be that the ALJ actually did give Dr. Mulk's opinion controlling weight to the extent of her views as to Claimant's RFC.  But that is not what the ALJ said he was doing in his decision (in fact, he said the opposite), and we decline to speculate about what the ALJ was thinking in light of what he actually said in writing.  Moreover, assuming the ALJ had sufficient reason not to give controlling weight to Dr. Mulk's opinion, he still was required to consider the factors in 20 C.F.R. § 404.1527(d)(2) and determine what weight to give it. *Campbell*, 627 F.3d at 308; *Larson*, 615 F.3d at 751. The ALJ also failed to do this analysis.

Further, as discussed below, the ALJ's RFC analysis suffers from another gap in the required logical bridge that is required to support his decision.  Therefore, for all of these reasons, remand is appropriate to allow the ALJ to articulate more clearly the reason for his decision concerning Claimant's residual functional capacity.

**B.      THE ALL CREATED AN EVIDENTIARY GAP BY DISCOUNTING THE
         MEDICAL OPINION EVIDENCE AND, THEREFORE, THE RFC IS NOT
         SUPPORTED BY SUBSTANTIAL EVIDENCE**

An ALJ must explain how he reached his conclusions about a claimant's physical

capabilities. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The ALJ must

build an "accurate and logical bridge from the evidence to the conclusion." *Berger*, 516 F.3d at

544. The ALJ must identify some record basis to support the RFC finding. *Scott v. Astrue*, 647

F.3d 734, 740 (7th Cir. 2011). An ALJ is not allowed to "play doctor" by using his own opinions

to fill an evidentiary gap in the record. *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003).

Claimant argues that the ALJ created an evidentiary gap by rejecting the medical opinions, and

therefore, the RFC is not supported by substantial evidence. The Court agrees.

Once the ALJ discounted Dr. Mulk's opinion, the remaining medical records include the

state agency physicians' evaluations, the opinion of an unnamed physician,[3] Claimant's hospital

admission records, and some test results. Although the ALJ briefly discussed the state agency

physicians and their residual functional capacity assessments, the ALJ specifically stated that he

assigned "no weight" to those assessments as they were "overly optimistic." R.21. In addition,

the ALJ only gave "some weight" to the opinion of the unnamed physician who placed "no

limitations on the claimant's ability to perform basic work related activities." R.22. However,

there is nothing in the record to indicate what evidence that doctor was relying on to formulate

his or her opinion, and there are no medical records or notes from this doctor to support the

---

[3] There is an opinion from a physician in Olympia Fields, Illinois included in the medical
records, but the physician's name is illegible. The ALJ characterizes this doctor as an "unnamed
physician." R.22, 548-552.

opinion.  Without more, it was not reasonable for the ALJ to give any weight to the unidentified physician's opinion.

By rejecting in whole or in part the opinions of Dr. Mulk and the state agency physicians and relying unreasonably on an unsupported opinion of an unnamed physician, the ALJ created a gap in the medical record.  *See Bailey v. Barnhart*, 473 F. Supp. 2d 822, (N.D. Ill. 2006) (after rejecting the available opinion testimony from a claimant's treating physician and the consulting doctors' assessments, an ALJ cannot construct a "middle ground" RFC without any medical evidence to support such a finding).  This evidentiary deficit results in a lack of substantial evidence to support the ALJ's assessment of Claimant's RFC.

Remand, therefore, is the appropriate result in this case at this time.  Nothing in this Court's decision today is intended to say that the result the ALJ reached here is wrong on the merits.  But we also cannot affirm the result reached by the ALJ on this record.  The ALJ must fill in the evidentiary deficit either by better explaining his conclusions, seeking further information from Dr. Mulk or obtaining an opinion from an  independent examining physician or a medical expert.[4]

---

[4] *See Suide v. Astrue*, 371 Fed. App'x. 684, 690 (7th Cir. 2010) (remanding where ALJ created an evidentiary deficit when the ALJ rejected treating physician's opinion and then made a RFC determination without supporting medical evidence); *Barnett v. Astrue* 381 F.3d 664, 669 (7th Cir. 2004) (holding that when an ALJ is concerned with the lack of backup support for a long-term treating physician's opinion, the ALJ should contact the doctor for clarification of the medical opinion); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (remanding where ALJ should have sought more information); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (remanding where ALJ discounted severity of claimant's arthritis without ordering new diagnostic tests); *see also* SSR 96–2p, at 4 ("additional development ... may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record).

C.    **THE ALJ ADEQUATELY CONSIDERED CLAIMANT'S SLEEP APNEA AND FATIGUE**

Social Security Ruling 96–8p requires that a determination of a claimant's RFC must "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p. Claimant also argues that the ALJ's RFC assessment legally was deficient because he failed to consider evidence of Claimant's sleep apnea and his complaints about fatigue. The ALJ, however, did not necessarily fail to properly analyze Claimant's complaints. R.21.

After consideration of the evidence, the ALJ concluded that Claimant's activities of daily living indicate that Claimant's reported functional limitations cannot be accepted as consistent with the medical and other evidence, as required by SSR 96–8p. R.22–23.  The ALJ acknowledged that Claimant described limited activities of daily living, but also noted that Claimant admitted he was capable of independently cooking and shopping (with assistance when his legs bothered him) in his Disability Function Report. R.21. Claimant also reported doing crossword puzzles and watching television daily. R.21.

In his decision, the ALJ specifically concluded "any limitation alleged is likely due to choice, since the record does not support [Claimant's] claim of significant difficulty with walking, tiredness, shakiness, dizziness three to four times a week due to uncontrolled diabetes, kidney problems with frequent urination at night, or problems with sleep apnea since 2008." R.21.  The ALJ explained that "during the face to face field office interview, the claimant was observed to have no problem hearing, reading, seeing, writing, breathing, understanding concentrating or standing." R.21. The ALJ also addressed the medical evidence related to

Claimant's complaints of fatigue and dizziness and determined that the medical evidence did not support Claimant's allegations. R. 23.

Here, the ALJ analyzed Claimant's complaints as well as the medical evidence of record with regard to Claimant's sleep apnea and fatigue and reasonably concluded that the medical evidence did not support Claimant's complaints. The Court, however, already has found that on remand the ALJ is required to cure an evidentiary deficit by either better explaining his conclusion, seeking additional information from Dr. Mulk or obtaining additional medical opinions. On remand, the ALJ also must use any additional medical information obtained to re-assess Claimant's RFC, if necessary, which necessarily will involve a discussion of why reported symptom-related functional limitations – including fatigue, difficulty walking, tiredness and shakiness – either can or cannot be accepted as consistent with the medical opinions and other record evidence.

## D.     THE ALJ ADEQUATELY CONSIDERED CLAIMANT'S OBESITY

When considering a claimant's combination of impairments, the ALJ must "consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolations." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Obesity in combination with other impairment can create the equivalent of a listing "if the impairment is equivalent in severity to a listed impairment." *Accurso v. Astrue*, 2011 578849, at *3 (N.D. Ill. 2011) (internal quotation and citation omitted); *Gentle v. Barnhardt*, 430 F.3d 865, 868 (7th Cir. 2005) (reversing an ALJ decision because the ALJ failed to consider the incremental effect of obesity on claimant's limitations). Claimant argues that the ALJ did not properly analyze his obesity as an aggravating factor to his impairments. We disagree.

19

A plain reading of the ALJ's decision, and in particular the discussion of Claimant' RFC, reveals that the ALJ considered Claimant's obesity. R.20. The ALJ specifically discussed Claimant's obesity and noted that "the record fails to document significant problems due to obesity that would warrant further limitations." R.20. The Court cannot say that the ALJ's conclusion was unreasonable or not supported by substantial evidence. There is no medical opinion in the record that identified Claimant's obesity as contributing factor to his physical impairments, and Claimant fails to point to any other evidence, other than argument of his counsel, that suggests that Claimant's obesity exacerbated his physical impairments.

Here, the ALJ explicitly discussed Claimant's obesity in combination with his other impairments and reasonably concluded Claimant's obesity would not require further limitations in the RFC. R.20. We find no error with this analysis. If, however, on remand, additional evidence is submitted that further discusses Claimant's obesity and the impact it has on Claimant's impairments and/or physical capabilities, then the ALJ will have to reconsider the limiting effect of Claimant's obesity on his functional capacity.

**E.     THE ALJ SATISFIED HIS BURDEN AT STEP 5 WHEN CONSIDERING THE VE'S TESTIMONY**

While a claimant bears the burden of proof at steps one through four of the disability analysis, the burden shifts to the Commissioner at step five. *Young v. Barnhardt*, 362 F.3d 995, 1000 (7th Cir. 2004). At the step five of the disability analysis, the Commissioner must determine whether a significant number of jobs exist which a claimant can perform given his limitations. *Craft*, 539 F.3d at 674. The ALJ must demonstrate that work exists in significant numbers in the national economy that a claimant can do given the ALJ's RFC finding based on

the claimant's age, education and work experience.  20 C.F.R. §§ 404.1512(g) and 404.1560(c).

This finding must be supported by substantial evidence to overcome the Commissioner's burden.

42 U.S.C. § 405(g); *Overman v. Astrue*, 456 F.3d 456, 465 (7th Cir. 2008).

The premise of Claimant's final argument is that the VE testified equivocally about whether an individual who required a cane would be able to perform the jobs identified by the VE.  During the hearing, counsel for Claimant posed a hypothetical question to the VE whether someone with Claimant's alleged impairments, who also had difficulty ambulating and who used a cane, would be able to do the jobs suggested by the VE, including information or office clerks. R.98-100.  The VE responded: "The tasks required in these types of jobs would – an individual would need to carry a file to say a file cabinet, and be able to open the file cabinet and put the file in. Opening the cabinet and, you know, that minute that it would take to open the cabinet and – you know, they may need to stand and use one hand, you know, to grab the files already in the cabinet and put the other one in. So if they could never, ever let go of their cane, then it might make it more difficult. I can't say it would completely preclude it." R.98-99.  There is nothing equivocal about the VE's testimony, the VE testified that use of a case would not preclude work. In addition, based on the hypothetical posed by the ALJ to the VE which incorporated the ALJ's RFC, the VE concluded that there were jobs in the national economy that Claimant could perform. R.94.

Relying on the VE's testimony, the ALJ satisfied his burden at step five and reasonably concluded that Claimant's use of a cane "would not preclude the performance of the jobs identified." R.19.  Although we do not take issue with the ALJ's step five finding at this time,

because this matter is being remanded for the ALJ to revisit his RFC finding, the ALJ may have to  re-assess his step five finding if the RFC changes on remand.

## IV.  CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant Stacey Macon's motion for summary judgment is granted in part and denied in part [Dkt.#27], and the Commissioner's motion is granted in part and denied in part [Dkt.#35]. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 10, 2013